**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ANTHONY L. CIOCCHETTI,

    Defendant-Appellant.

No. 10-8101
(D.C. Nos. 2:09-CV-00287-ABJ;
2:07-CR-00246-ABJ-1)
(D. Wyo.)

---

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]

---

Before **KELLY**, **HARTZ**, and **HOLMES**, Circuit Judges.

---

Petitioner Anthony L. Ciocchetti, a pro se litigant incarcerated in the

federal correctional facility in Florence, Colorado,[1] seeks a certificate of

appealability ("COA") to challenge the district court's denial of his petition for a

---

[*] This order is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

After examining the appellate record, this three-judge panel determined unanimously that oral argument would not be of material assistance in the determination of this appeal. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

[1] Because Mr. Ciocchetti is proceeding pro se, we construe his filings liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

writ of habeas corpus filed pursuant to 28 U.S.C. § 2255. Exercising jurisdiction under 28 U.S.C. §§ 1291 and 2253(a), we **DENY** Mr. Ciocchetti's application and **DISMISS** his appeal.

## BACKGROUND

In February 2008, Mr. Ciocchetti was convicted by a jury in federal court on charges of bank fraud, in violation of 18 U.S.C. § 1344, and making materially false statements in connection with a bank loan application, in violation of 18 U.S.C. § 1014. He was sentenced to sixty-five months' imprisonment, to be followed by five years of supervised release, and ordered to pay $460,122 in restitution. Following his conviction, Mr. Ciocchetti appealed to this court, challenging only the district court's calculation of the loss amount at his sentencing. We affirmed. *See United States v. Ciocchetti*, 330 F. App'x 745 (10th Cir. 2009).

Mr. Ciocchetti then filed a petition for a writ of habeas corpus in the United States District Court for the District of Wyoming, asserting that he received ineffective assistance of counsel. More specifically, he averred that his trial attorneys were constitutionally deficient in (1) permitting a constructive amendment of the indictment, (2) failing to cross-examine witnesses adequately, (3) not asking for a limiting jury instruction, and (4) not raising a claim of error under *United States v. Booker*, 543 U.S. 220 (2005), regarding the district court's calculation of his advisory Guidelines sentencing range based upon facts that the

court found by a preponderance of the evidence.  The district court found no merit to these claims and denied both Mr. Ciocchetti's § 2255 petition and his request for an evidentiary hearing.  It also denied him a COA.  Mr. Ciocchetti now seeks to appeal.

## STANDARD OF REVIEW

A COA is a jurisdictional prerequisite to this court's review of a § 2255 motion.  28 U.S.C. § 2253(c)(1)(B); *accord Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *United States v. Gonzalez*, 596 F.3d 1228, 1241 (10th Cir. 2010). "We will issue a COA 'only if the applicant has made a substantial showing of the denial of a constitutional right.'"  *Allen v. Zavaras*, 568 F.3d 1197, 1199 (10th Cir. 2009) (quoting 28 U.S.C. § 2253(c)(2)); *accord Clark v. Oklahoma*, 468 F.3d 711, 713 (10th Cir. 2006).  Under this standard, "the applicant must show 'that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'"  *United States v. Taylor*, 454 F.3d 1075, 1078 (10th Cir. 2006) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  "In other words, the applicant must show that the district court's resolution of the constitutional claim was either 'debatable or wrong.'"  *Id.* (quoting *Slack*, 529 U.S. at 484).

Importantly, our inquiry does not necessitate a "full consideration of the factual or legal bases adduced in support of the claims."  *Miller-El*, 537 U.S. at

336. Rather, all that is required is "an overview of the claims . . . and a general assessment of their merits." *Id.* Although Mr. Ciocchetti is not required to demonstrate that his appeal will succeed in order to obtain a COA, he must "prove something more than the absence of frivolity or the existence of mere good faith on his or her part." *Id.* at 338 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)) (internal quotation marks omitted).

## DISCUSSION

Mr. Ciocchetti seeks a COA so as to challenge the district court's denial of his ineffective assistance of counsel claim. In his application, he reasserts three of the four grounds that he raised below—*viz.*, that he received ineffective assistance of counsel when his attorneys (1) allowed a constructive amendment to the indictment, (2) failed to adequately cross-examine a key witness, and (3) did not challenge the trial court's use of "facts" not found by a jury to enhance his advisory Guidelines range. In addition, Mr. Ciocchetti maintains that "the lower court ought to have granted an evidentiary hearing to resolve the genuine material facts at issue between what [Mr. Ciocchetti] claimed in his [original habeas petition] and what [the government] said excused [its] willful misrepresentation of the facts and evidence." Aplt. Combined Opening Br. & COA Appl. at iv.

## I. Ineffective Assistance of Counsel Claims

Where a "COA application rests on claims of ineffective assistance of counsel, in order to determine if [a movant] can make a substantial showing of the

- 4 -

denial of a constitutional right we must undertake a preliminary analysis . . . in light of the two-part test for ineffective assistance" articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). *United States v. Harris*, 368 F. App'x 866, 868 (10th Cir. 2010). "Under *Strickland*, [a movant] must show that counsel's performance fell below an objective standard of reasonableness as measured against prevailing professional norms, and he must show that there is a reasonable probability that the outcome would have been different but for counsel's inadequate performance." *Sandoval v. Ulibarri*, 548 F.3d 902, 909 (10th Cir. 2008) (citing *Strickland*, 466 U.S. at 688).

"When, as here, [a] basis for the ineffective assistance claim is the failure to raise an issue, we must look to the merits of the omitted issue." *United States v. Orange*, 447 F.3d 792, 797 (10th Cir. 2006). "If the omitted issue is without merit, counsel's failure to raise it 'does not constitute constitutionally ineffective assistance of counsel.'" *United States v. Cook*, 45 F.3d 388, 393 (10th Cir. 1995) (quoting *United States v. Dixon*, 1 F.3d 1080, 1084 n.5 (10th Cir. 1993)); *accord Orange*, 447 F.3d at 797; *cf. Smith v. Robbins*, 528 U.S. 259, 288 (2000) ("[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." (citing *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983))).

**A.    Constructive Amendment Claim**

In his application, Mr. Ciocchetti first asserts that his trial attorneys rendered constitutionally ineffective assistance of counsel by failing to object to the constructive amendment of the Indictment.  Count Three of the Indictment provided:

> On or about November 29, 2006, at Gillette, in the District of Wyoming, the Defendant, ANTHONY L. CIOCCHETTI, did knowingly make materially false statements for the purpose of influencing the actions of Bank of the West, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and in connection with the Defendant's acquisition of two lines of credit totaling $125,500, which statements *included*: the use of false IRS Individual Tax Returns . . . .

R. at 255 (Dist. Ct. Order Denying Mot. to Vacate Sentence Pursuant to 28 U.S.C. § 2255, filed Nov. 3, 2010) (emphasis added).  At trial, however, the government failed to prove the IRS tax returns were false, and a jury instruction was subsequently submitted as to Count Three that replaced the IRS tax returns with a Merrill Lynch account statement that had been proven false.  As he did before the district court, Mr. Ciocchetti argues that this change resulted in a constructive amendment of the Indictment.  Furthermore, he claims that "counsel ought to have objected to the constructive amendment, if for no other reason than it came after defense rested."  Aplt. Combined Opening Br. & COA Appl. at 16.

The district court dismissed Mr. Ciocchetti's constructive-amendment claim

- 6 -

on the grounds that, at most, the jury instruction effectuated a non-prejudicial variance, rather than a constructive amendment, and thus his attorneys were not ineffective for failing to challenge it.  Reasonable jurists could not disagree with this resolution.  A constructive amendment occurs when

> the Government, through evidence presented at trial, or the district court, through instructions to the jury, broadens the basis for a defendant's conviction beyond acts charged in the indictment.  To constitute a constructive amendment, the district court proceedings must modify an essential element of the offense or raise the possibility that the defendant was convicted of an offense other than that charged in the indictment.  Where an indictment properly pleads violation of a statute, and the defendant was not misled about the nature of the charges, his substantive rights are not prejudiced.

*United States v. Cruz-Rodriguez*, 570 F.3d 1179, 1182 (10th Cir. 2009) (quoting *United States v. Van Tieu*, 279 F.3d 917, 921 (10th Cir. 2002)) (internal quotation marks omitted); *accord United States v. Farr*, 536 F.3d 1174, 1180 (10th Cir. 2008).  A constructive amendment "is reversible per se."  *United States v. Vigil*, 523 F.3d 1258, 1265 (10th Cir. 2009).  In contrast, "[a] simple variance arises when the evidence adduced at trial establishes facts different from those alleged in the indictment, and triggers harmless error analysis."  *United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007).

The district court was clearly correct in its determination that the trial court's substitution of the Merrill Lynch account statement for the IRS tax returns in the jury instruction did not amount to a constructive amendment.  The

Indictment charged Mr. Ciocchetti in general terms, indicating that the false statements *included* the IRS tax returns. This language broadened rather than limited the Indictment, thereby allowing the government to use evidence beyond the IRS tax returns to show the use of false statements without "misle[ading Mr. Ciocchetti] about the *nature* of the charge[]" against him. *Cruz-Rodriguez*, 573 F.3d at 1182 (emphasis added) (quoting *Van Tieu*, 279 F.3d at 921) (internal quotation marks omitted); *see Stirone v. United States*, 361 U.S. 212, 218 (1960) (stating that, under an indictment "drawn in general terms," a conviction might rest on a showing of evidence beyond that which is specifically identified in the indictment); *cf. United States v. Rivera*, 837 F.2d 906, 929 (10th Cir. 1988) ("[A]n indictment may be drafted in general terms so long as it apprises the defendant of the *nature* of the charge against him."), *vacated on other grounds*, 900 F.2d 1462 (10th Cir. 1990) (en banc). Thus, Mr. Ciocchetti fails to satisfy the first prong of *Strickland*: in not advancing the clearly meritless proposition that the jury instruction resulted in a constructive amendment, his attorneys' performance did not "f[a]ll below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687; *see also Cook*, 45 F.3d at 393 (noting that counsel is not ineffective for failing to bring meritless claims); *cf. United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.").

Furthermore, even if we assume, *arguendo*, that the government's substitution of the Merrill Lynch statement resulted in a simple variance, Mr. Ciocchetti—as the district court noted—was not prejudiced by it, and, as a result, his attorneys' failure to raise a challenge based upon this substitution cannot satisfy the second prong of *Strickland* either. "A variance will cause a conviction to be overturned only when . . . 'the defendant is prejudiced in his defense because he cannot anticipate from the indictment what evidence will be presented against him or is exposed to the risk of double jeopardy.'" *United States v. Hamilton*, 992 F.2d 1126, 1130 (10th Cir. 1993) (quoting *Hunter v. New Mexico*, 916 F.2d 595, 599 (10th Cir. 1990)). Neither situation is applicable here.

First, Mr. Ciocchetti received adequate notice that the veracity of the Merrill Lynch account statement was at issue—it was listed in the Indictment under another charge, and Mr. Ciocchetti defended against it at trial. *See United States v. Boston*, 718 F.2d 1511, 1516 (10th Cir. 1983) ("We . . . believe that Boston had ample notice from the indictment of the acts for which he was to be tried. The convictions were not based on facts outside the scope of the indictment [as a whole] . . . ." (citation omitted)); *United States v. Tomasetta*, 429 F.2d 978, 979 (1st Cir. 1970) (recognizing that the "question is whether the indictment *as a whole* conveys sufficient information to properly identify the conduct relied upon by the grand jury in preferring the charge" (emphasis added)); *see also United States v. Withers*, 210 F.3d 391, 2000 WL 376619, at *3 (10th Cir. Apr. 13, 2000)

(unpublished table decision) ("The indictment in this case, read as a whole, clearly appraised Withers of the charges against him and, thus, was sufficient." (footnote omitted)).

Second, the change between the Indictment and the jury instruction did not expose Mr. Ciocchetti to a potential double-jeopardy risk because, "[f]or purposes of barring a future prosecution, it is the *judgment* and not the indictment alone which acts as a bar, and the entire record may be considered in evaluating a subsequent claim of double jeopardy." *United States v. Whitman*, 665 F.2d 313, 318 (10th Cir. 1981) (emphasis added) (quoting *United States v. Henry*, 504 F.2d 1335, 1338 (10th Cir. 1974)) (internal quotation marks omitted); *see also Boston*, 718 F.2d at 1515. The record in this case clearly identifies the basis for Mr. Ciocchetti's convictions, giving him ample protection against future prosecution for the same crimes.

Accordingly, even if a simple variance did occur, it was harmless, and Mr. Ciocchetti, therefore, cannot show prejudice as a result. Because his claim does not satisfy either prong of *Strickland*, Mr. Ciocchetti has failed to make a substantial showing of a denial of a constitutional right based on his attorneys' failure to raise this challenge. Reasonable jurists could not disagree with this outcome.

## B. Failure to Adequately Cross-Examine Claim

Mr. Ciocchetti next maintains that his attorneys were constitutionally ineffective because they failed to adequately cross-examine Feron Ferguson, the president of Pinnacle Bank, regarding two insufficient funds checks that eventually served as the basis for his conviction of bank fraud, in violation of 18 U.S.C. § 1344.[2] Mr. Ciocchetti claims that Mr. Ferguson "knew when he received the January 2 and 6 checks that they were not good," and that this "defeats any argument that [he] intended to defraud the Pinnacle Bank through the presentment of these checks." Aplt. Combined Opening Br. & COA Appl. at 18. At trial, however, Mr. Ferguson denied knowing the accounts were overdrawn when he attempted to deposit the two checks—totaling $90,000—that Mr. Ciocchetti had given him. Mr. Ciocchetti argues that he provided his attorneys with strong evidence to the contrary, and that they nevertheless refused to adequately challenge Mr. Ferguson's testimony. He contends that his attorneys' actions were

---

[2] In this application, Mr. Ciocchetti asserts that his attorneys were ineffective not only for failure to competently cross-examine Mr. Ferguson, but also for "fail[ure] to investigate the facts and interview witnessess who would have verified" his account. Aplt. Combined Opening Br. & COA Appl. at 17. Beyond this cursory reference, however, Mr. Ciocchetti makes no effort to develop his failure-to-investigate claim, and, therefore, we will not address it further. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[W]e routinely have declined to consider arguments that are not raised, or are inadequately presented, in an appellant's opening brief."); *see also Matthews v. McKune*, 133 F. App'x 512, 514 (10th Cir. 2005) (recognizing that the appellant's claim on appeal had been "abandoned" because, although "his motion for a COA . . . briefly assert[ed]" the claim, "he d[id] not brief the issue").

blatantly prejudicial as, had his attorneys "cross-examined [Mr. Ferguson] effectively, the jury would have seen through his lies in an instant." *Id.* at 19.

We need not tarry long on this issue. Even assuming that Mr. Ciocchetti's attorneys *should have* more vigorously questioned Mr. Ferguson, and thus the first prong of the *Strickland* test was met, Mr. Ciocchetti cannot show prejudice as a result. "Under § 1344, 'the intent necessary for a bank fraud conviction is an intent to deceive *the bank* in order to obtain from it money or other property.'" *United States v. Gallant*, 537 F.3d 1202, 1223 (10th Cir. 2008) (emphasis added) (quoting *United States v. Kenrick*, 221 F.3d 19, 26–27 (1st Cir. 2000) (en banc)). Accordingly, we have held that "[i]t is the financial institution itself—not its officers or agents—that is the victim of the fraud [18 U.S.C. § 1344] proscribes." *United States v. Waldroop*, 431 F.3d 736, 742 (10th Cir. 2005) (second alteration in original) (quoting *United States v. Saks*, 964 F.2d 1514, 1518–19 (5th Cir. 1992)) (internal quotation marks omitted); *see also United States v. Rackley*, 986 F.2d 1357, 1361 (10th Cir. 1993) ("Defendant confuses the notion of defrauding a federally insured bank with the idea of defrauding its owner or directors. It is the financial institution itself—not its directors or agents—that is the victim of the fraud the statute proscribes."). "Thus, even if [a bank official] kn[ows] the true nature of [a] transaction[], the institution[] could nevertheless be defrauded." *Rackley*, 986 F.2d at 1361; *see also Gallant*, 537 F.3d at 1224 n.13 (collecting cases).

As a result, even had Mr. Ciocchetti's attorneys done exactly what he now claims they should have done, and thereby revealed that Mr. Ferguson knew there were insufficient funds in the relevant accounts to cover the disputed checks, that would not preclude—as Mr. Ciocchetti seems to believe—a finding that he committed bank fraud. At most, it would have shown that Mr. Ferguson was complicit in Mr. Ciocchetti's fraud, and "[j]ust because [Mr. Ferguson] w[as] complicit in the scheme does not mean that [Pinnacle Bank], as an institution, knew or approved of what [Mr. Ciocchetti] w[as] doing." *Gallant*, 537 F.3d at 1225. Consequently, Mr. Ciocchetti cannot establish prejudice based upon his attorneys' failure to cross-examine Mr. Ferguson, and therefore cannot satisfy the second prong of the *Strickland* standard. Thus, reasonable jurists could not disagree with the district court's resolution of this claim.

## C. *Booker* Sentencing Claim

In addition, Mr. Ciocchetti claims that his attorneys were ineffective in failing to object when, at sentencing, the district court determined—allegedly in error—that he intended losses of over $5,000,000. The court's finding, which was based on a preponderance of the evidence, resulted in the court adding eighteen points to his base offense level of seven. This, in turn, yielded an advisory Guidelines range of fifty-seven to seventy-one months of imprisonment, well above the thirty to thirty-seven month range that he claims would otherwise be applicable.

- 13 -

Mr. Ciocchetti maintains that "the lower court burst through its prescribed jurisdiction and authority" when it "decided on a civil standard of preponderance of the evidence" that the total amount actually exceeded the $232,724.74 in losses that the jury found using the beyond-a-reasonable-doubt standard. Aplt. Combined Opening Br. & COA Appl. at 26. As he understands it, "[a]ny additional alleged losses were separate crimes [from the crimes of conviction] . . . and were not jury-found," and therefore the district court "exceeded [its] jurisdiction when [it] found [him] guilty on charges which carried their own prison-time sanctions, then used this preponderance-of-the-evidence-found-guilt to . . . impose[] a sentence of up to three years longer than the . . . range authorized." *Id.* at 28–29. Mr. Ciocchetti believes that, "[h]ad counsel not provided ineffective assistance [by not challenging the district court's actions in this regard], there is more than a reasonable probability that the result of the sentencing proceeding and/or the direct appeal would have been different." *Id.* at 28.

The district court found no merit to Mr. Ciocchetti's underlying claim, and we agree. Under the post-*Booker* advisory Guidelines regime, "[t]he Sixth Amendment is not violated when a district court finds additional facts by a preponderance standard in order to calculate an advisory Guidelines range." *United States v. Urbano*, 563 F.3d 1150, 1156 (10th Cir.), *cert. denied*, 130 S. Ct. 434 (2009); *accord United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir.

- 14 -

2005); *United States v. Dalton*, 409 F.3d 1247, 1252 (10th Cir. 2005). There is nothing in the record to suggest that the district court treated the calculated Guidelines range as anything other than advisory, and consequently there was no constitutional violation in the district court's use of facts found only by a preponderance of the evidence to enhance Mr. Ciocchetti's sentence.[3] *See United States v. Townley*, 472 F.3d 1267, 1276 (10th Cir. 2007) ("Appellant incorrectly argues that *Booker* error occurs any time a district court enhances a sentence based on facts not found by a jury. Rather, after *Booker*, a district court is not precluded from relying on judge-found facts in determining the applicable Guidelines range so long as the Guidelines are considered as advisory rather than mandatory.").

We have repeatedly affirmed this principle in similar situations. *See, e.g.*, *United States v. Washington*, 634 F.3d 1180, 1184 (10th Cir. 2011) (instructing

---

[3]     Mr. Ciocchetti faults the district court for not considering the Supreme Court's holding in *Cunningham v. California*, 549 U.S. 270 (2007), when addressing this claim. *See* Aplt. Combined Opening Br. & COA Appl. at 24–25. *Cunningham*, Mr. Ciocchetti suggests, stands for the proposition that "any [judge-found] fact which increases the sentence to which a defendant is exposed violates the Sixth Amendment." *Id.* at 25. Mr. Ciocchetti, of course, reads *Cunningham* too broadly. *Cunningham* addressed this question in the context of the California sentencing guidelines, which—unlike the federal sentencing guidelines—are mandatory. *See Cunningham*, 549 U.S. at 277. For this reason, we have previously rejected calls to reconsider our jurisprudence on this issue in the wake of *Cunningham*, and we do so again today. *See United States v. Ellis*, 525 F.3d 960, 966 (10th Cir. 2008) (refusing to "revisit our decision[s] in light of . . . *Cunningham*" because "California law called for mandatory sentencing, unlike the federal Sentencing Guidelines rendered advisory by *Booker*").

that a court, when making a net loss calculation for a fraud under U.S.S.G.

§ 2B1.1(b), "may use loss information that is supported by a preponderance of the

evidence"); *United States v. Sutton*, 520 F.3d 1259, 1262 (10th Cir. 2008) ("[W]e

recognize that the government has the burden of proving loss [under U.S.S.G.

§ 2B1.1(b)(1)] by a preponderance of the evidence."); *United States v. Galloway*,

509 F.3d 1246, 1251 (10th Cir. 2007) ("The government has the burden of

proving actual and intended loss by preponderance of the evidence."); *see also*

*United States v. Dazey*, 242 F. App'x 563, 568, 572–73 (10th Cir. 2007)

(affirming the district court's imposition of a twenty-level enhancement under

U.S.S.G. § 2B1.1(b)(1)(K) for losses of more than $7,000,000 based on the

preponderance of the evidence, despite the jury's finding that only $2,292,500

went directly to the defendant as a result of his role in a large-scale investment

fraud conspiracy); *cf. United States v. Rodriguez-Felix*, 450 F.3d 1117, 1131

(10th Cir. 2006) (approving the district court's use of uncharged conduct, proved

by a preponderance of the evidence, to increase the total quantity of drugs

attributed to the defendant).  Accordingly, Mr. Ciocchetti has failed to make a

substantial showing of the denial of a constitutional right in this regard.

Reasonable jurists thus could not disagree with the district court's resolution of

this claim.

## II.    Evidentiary Hearing Request

Finally, Mr. Ciocchetti challenges the district court's denial of his request for an evidentiary hearing.  We review the district court's decision to deny an evidentiary hearing for abuse of discretion.  *Hooks v. Workman*, 606 F.3d 715, 731 (10th Cir. 2010).

Mr. Ciocchetti suggests that an evidentiary hearing is necessary so as to "enable [him] to demonstrate the fact that [Mr.] Ferguson's claims were incredible and unbelievable in light of . . . what he did, said, and the evidence presented."  Aplt. Combined Opening Br. & COA Appl. at 23.  As discussed above, however, each of Mr. Ciocchetti's claims are "resolvable solely on the basis of the existing record."  *Hooks*, 606 F.3d at 731; *see also* 28 U.S.C. § 2255(b) (stating that an evidentiary hearing is not required where "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief").  As such, the district court did not abuse its discretion in denying Mr. Ciocchetti's request for an evidentiary hearing.

**CONCLUSION**

For the foregoing reasons, we **DENY** Mr. Ciocchetti's application for a

COA and **DISMISS** his appeal.

ENTERED FOR THE COURT


Jerome A. Holmes
Circuit Judge